**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| NATHANIEL POWELL, SR., et al., | * | |
| Plaintiffs, | * | |
| vs. | * | Case No. 1:26-CV-00262-JMC |
| HARFORD COUNTY, MARYLAND, | * | |
| Defendant. | * | |

* * * * * * * * * * *

**HARFORD COUNTY'S REPLY TO PLAINTIFFS'**
**<u>OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT</u>**

Defendant, Harford County, Maryland (the "County"), by its undersigned attorneys, and pursuant to the Federal Rules of Civil Procedure and the U.S. District Court Local Rules of Procedure files this Reply to Plaintiff's Opposition to Harford County's Motion to Dismiss Amended Complaint stating as follows:

**A. Plaintiff's Reliance on *Ram Ditta* and SFP § 9-108 is Misplaced; neither the availability of Eleventh Amendment Immunity nor the Coverage and Defense Provision of an Inapplicable State Statute have any Bearing on the Viability of Plaintiffs' Claims Against the County**

In asserting that the County is the proper defendant in this suit, plaintiffs rely primarily on the four-factor test set forth in *Ram Ditta*; such test which courts use to determine whether an entity is entitled to Eleventh Amendment Immunity. *Ram Ditta ex rel. Ram Ditta v. Maryland Nat. Cap. Park & Plan. Comm'n*, 822 F.2d 456, 457-59 (4th Cir. 1987). To be clear, the County is not asserting Eleventh Amendment immunity and has not contended in any of its papers that it is entitled to such immunity. Plaintiffs emphasize the first factor of the *Ram Ditta* test which relates to whether the State would be responsible for paying any judgment in the relevant case. *Id.*

Plaintiffs seek to divert the Court's attention to the *Ram Ditta* test, and specifically the factor relative to the payor of any judgment, in an ill-fated attempt to implicate State Finance & Procurement **§** 9-108 ("SFP 9-108"), a state statute which provides for coverage and defense of sheriffs or deputy sheriffs engaged in certain conduct when implicated in tortious acts or omissions through the **Maryland Tort Claims Act**. (emphasis added) Plaintiffs are under the erroneous belief that because SFP 9-108 could result in payment by the County for certain tortious sheriff conduct raised in state court, prong 1 of the *Ram Ditta* test militates against the Sheriff's being state actors. The problems with this position are extensive.

First, SFP 9-108 is expressly limited to state court actions brought under the Maryland Tort Claims Act, such act which is expressly inapplicable to actions brought against sheriffs and their deputies in federal court and which expressly prohibits naming the County as a defendant in such claims. Md. Code Ann., State Gov't. § 12-103.3(a)(4) & (b)(2)(ii).

Second, SFP 9-108, while potentially rendering the County a payor of certain state court tort judgments relative to tortious acts or omissions of sheriffs and their deputies, certainly does not render the County a proper **party defendant** in such situations, a distinction which plaintiffs gloss over repeatedly in this litigation. Plaintiffs have flagrantly interchanged "defense and coverage" with "liability" when it suits them throughout these proceedings ignoring the important differences which are fatal to its theory against the County. *See e.g.* (Pltff. Opp. To MD Am. Compl. 29. ("SFP § 9-108 undeniably places the liability for the operation….of local detention facilities…"))

*Ram Ditta* and SFP § 9-108 have nothing to do with another, and neither together nor separately provide an avenue for Plaintiffs to assert a viable cause of action against the County.

**B. *Ram Ditta* and *Dotson* and its Progeny Address Different Legal Questions and thus Cannot be Used Interchangeably in a State Actor vs. County Actor Analysis**

*Ram Ditta* and *Dotson* address completely different questions, namely whether eleventh amendment immunity applies to certain defendants, and whether a sheriff is a State or County actor, respectively; and neither case sets forth a doctrine which allows a path forward for the Plaintiffs. *Dotson v. Chester*, 937 F.2d 920 (4th Cir. 1991). The holding in *Ram Ditta* is unavailing Plaintiffs as a threshold matter because it addresses a completely separate question as has already been discussed. *Dotson*, while more on point from a subject matter perspective does not permit this action to move forward because of the allegations of the Amended Complaint.

While it is true that under *Dotson* and *Santos*, a Sheriff could be considered a County actor in certain circumstances, pled facts of the Plaintiffs' Amended Complaint do not satisfy the standard for such a determination. *Dotson v. Chester*, 937 F.2d 920 (4th Cir. 1991); *Santos v. Frederick Cnty. Bd. Of Comm'rs*, 346 F.Supp.3d 785 (D. Md. 2018). In *Santos*, the Court, citing Supreme Court precedent, correctly observed: "Municipalities may be held liable for constitutional violations committed by their employees or agents when official custom, policy or practice of the municipality, or decision of a final policymaker for the municipality, is responsible for causing the deprivation. *Santos*, 346 F.Supp.3d at 791 (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). The issue before the Court, thus, is: Were the Harford County Sheriff personnel including those that staff the Harford County Detention Center ("HCDC") final policy makers of the County with respect to HCDC custom, policy or practice for care and handling of inmates?

Again, the Court in *Santos*, correctly following Supreme Court precedent, observed: "[T]he determination of an individual's final policy making authority **is a question of state law**." (Emphasis added) *Santos*, 436 F.Supp.3d at 792 (citing *City of St. Louis v. Praprotnik*, 485 U.S.

112, 124 (1988)). Moreover, "the [Supreme] Court has repeatedly declared [that determination] to be a question of law reserved to the court." *Id*. (citing *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989)). "[S]tate law (which may include valid local ordinances and regulations) will always direct a court to some official body that has the responsibility for making law or setting policy in any given area of a local government's business." *Id*. (citing *Praprotnik*, 485 U.S. at 125.) Thus, Maryland State law in conjunction with any applicable County law, not federal law, resolves the issue of whether the Sheriff and/or the Warden and their personnel are policy making officials for Harford County with respect to the operation of the HCDC. Maryland law unequivocally holds that the Sheriff and his deputies, including the Warden, are State officers and employees, not County employees. *Rucker v. Harford Cnty.*, 316 Md. 275 (1989).

The Court, in *Santos*, attributed the Sheriff's policies on the detention and delivery of aliens subject to an ICE civil warrant to Frederick County for the following reasons. First, and significantly, 8 U.S.C. § 1357(g) permitted a state and/or **a local government** to enter into an agreement with ICE to detain and deliver aliens subject to an ICE civil warrant to ICE; the State, however, purposefully never agreed to enter into such an agreement with ICE. *Santos*, 346 F.Supp.3d at 795 (emphasis added). At the time of the detentions at issue, Frederick County was the only county in Maryland participating in the ICE § 1357(g) program. *Id*. at 796. The Court's decision to attribute the Frederick County sheriff's policy on detention of aliens on a civil ICE warrant to Frederick County "turn[ed] on the **unusual fact** that the 8 U.S.C. § 1357(g) program and the agreement reached between ICE and Sheriff Jenkins [was] not an exercise of state executive power – it [was], instead, a **unique agreement** whereby the federal government directly delegate[ed] its own plenary power over immigration by deputizing local political subdivisions to 'perform certain functions of an immigration officer.'" *Santos*, 346 F.Supp.3d at 794 (Emphasis

added). "Close inquiry finds Sheriff Jenkins as the final policy maker for Frederick County **over the 'particular issue' in question** – Frederick County's participation in the 8 U.S.C. § 1357(g) program." *Santos*, 346 F.Supp.3d at 795 (emphasis added). "The **narrow, localized scope of this policy** distinguishes it from the facts of *McMillan* [*v. Monroe Cnty. Ala.*, 520 U.S. 781 (1997)]." *Santos*, 346 F.Supp.3d at 796 (emphasis added). The ruling in *Santos* was that the Frederick County sheriff's policy on detention of immigrants subject to an ICE civil detention warrant was uniquely a county policy because it was in contradiction to the policy of the State on the matter and it was made solely for and on behalf of Frederick County. The facts and law that dictated the outcome in *Santos* bear no resemblance to the law and facts underpinning the conclusion that State correctional policy being implemented by State officers and employees, *i.e.*, the Sheriff and Warden, cannot be attributed to the County under the analysis required by Supreme Court precedents and the precedents of the Court and the Circuit Court of Appeals for the Fourth Judicial Circuit. The Court, in *Santos*, examined Maryland and Frederick County law and the interplay between such State and local law in reaching its very narrow conclusion that for purposes of an ICE civil detention warrant, the decision to participate in the § 1357(g) program was a County policy decision, not a State policy decision.

In juxtaposition to the very narrow and confined focus of the Frederick County § 1357(g) program, Maryland, pursuant to the Correctional Services Article of the Maryland Annotated Code and the COMAR Regulations adopted by the Maryland Department of Public Safety and Correctional Services comprehensively dictates and regulates the correctional standards that must be observed and implemented in a local detention center. The State law and regulations are so pervasive and detailed that a Maryland court is likely to conclude that Maryland counties are largely, and in many instances entirely, preempted under the doctrines of implied preemption and

conflict preemption from regulating correctional services, and certainly cannot establish ordinances or regulations in conflict with the State laws and regulations establishing correctional policies and practices. *E.g.*, *Board of Cnty. Comm'rs of Washington Cnty. Perennial Solar, LLC*, 464 Md. 610 (2019); *Tyma v. Montgomery Cnty.*, 369 Md. 497 (2002); *Allied Vending, Inc. v. City of Bowie*, 332 Md. 279 (1993); *Talbot Cnty. v. Skipper*, 329 Md. 481 (1993); Md. Code Ann., Local Gov't § 10-206(b) (providing: "A county may exercise the powers provided under this title only to the extent that the powers are not preempted by or in conflict with public general law.") Correctional law is controlled by and a policy and practice of State. There are no County laws or regulations that impact the operation or maintenance of the HCDC or otherwise directs the Sheriff or the Warden in any manner whatsoever with respect to the HCDC. The operation of the HCDC is dictated and directed by State law and regulations and is implemented by State officers and employees. The customs, policies and practices of the HCDC are not in any manner whatsoever directed or dictated by County laws or regulations. State law conclusively and overwhelmingly established that the customs, policies and practices of the Sheriff and the Warden are those of the State, not the County.

Similarly, the facts and the Maryland and Dorchester County law before the courts in *Dotson* bear no resemblance to the facts and law currently before the Court.

The express powers act in effect in 1991 has been repealed and recodified with additions and amendments. 2013 Md. Laws Ch. 119 at 3, 11 (Westlaw pdf version). Md. Code Ann., Local Gov't § 10-206(b) is new language that was substituted for language previously in Md. Code Ann., Art. 25A § 5. 2013 Md. Laws Ch. 119 at 210-11 (Westlaw pdf version).

The Correctional Services Article of the Maryland Annotated Code was not initially adopted until 1999. 1999 Md. Laws Ch. 54 at 1 (Westlaw pdf version). Under § 11-102, a county

"**may** establish and maintain a local correctional facility" but is not required to establish and maintain a local correctional facility. Md. Code Ann., Corr. Servs. § 11-102 (emphasis added). Under the Correctional Services Article, a local correctional facility is defined as "a correctional facility that is **operated** by one or more counties." Md. Code Ann., Corr. Servs. § 1-101(l)(1) (emphasis added). Again, the County has never established, operated or maintained the HCDC. Throughout recorded history, the HCDC has been operated and maintained by the Sheriff who carried over the common law duty of an English sheriff to maintain a local prison. [1] Moreover, a local government's operation of a local jail "does not affect the powers and duties of the sheriff of a county with respect to safekeeping and custody of an incarcerated individual or other individual." Md. Code Ann., Corr. Servs. § 11-103(b). Again, State law has empowered the Sheriff, a State Constitutional officer and the Warden, his alter ego and a State employee, with responsibility for the safekeeping and custody of incarcerated individuals. *See Rucker v. Harford Cnty.*, 316 Md. 275, 281, 287-88, 289, 290, 291 (1989). Again, State law dictates that their customs, practices and policies are those of the State, not the County.

In *Dotson*, the Fourth Circuit observed that in Dorchester County, "the [Dorchester] county commissioners … appointed a nonpartisan board … to act as jail supervisors." *Dobson*, 937 F.2d at 929. That board "[had] supervision and control of the jail and adjoining grounds" and was charged with "pass[ing] and enforce[ing] all necessary rules for the protection and the health, cleanliness, and comfort of inmates, and for the regulations of all matters connected with the general management of the jail." *Dotson*, 937 F.2d at 929. Thus, a Dorchester County empowered

[1] The Maryland General Assembly, through public local laws, made the Sheriff responsible for operating and maintaining the HCDC and providing medical care and treatment for inmates in the custody of the Sheriff. Code of Public Local Laws of Harford County §§ 479, 482 (Everstine ed. 1965); Public Local Laws of Harford County §§ 454, 457 (Everstine ed. 1957); Public Local Laws of Harford County §§ 455, 458 (Higinbothom ed. 1942) (indicating that, pursuant to State law, the Sheriff was responsible for operating and maintaining the HCDC and for providing medical care to inmates since at least as early as 1916).

board (not the Dorchester County Sheriff) made final policy decisions for the County, a practice that continued until 1961, when the sheriff replaced the board formerly appointed by the Dorchester County Commissioners to operate the county jail. *Id*.

Harford County has never overseen, supervised, operated or maintained the HCDC. Historically, the Maryland General Assembly adopted a public local law in Harford County that made the Sheriff responsible for the healthcare of an inmate incarcerated in the HCDC, providing since at least as early as 1916: "It shall be the duty of the sheriff to employ a competent physician to attend the inmates of the county jail whenever in his judgment said inmates, by reason of sickness or otherwise, may require such attention." Historically and pursuant to State law, the Sheriff and the Warden, not the County, have been responsible for the physical and mental health and well-being of inmates at the HCDC. Code of Public Local Laws of Harford County § 482 (Everstine ed. 1965); Public Local Laws of Harford County § 457 (Everstine ed. 1957); Public Local Laws of Harford County § 458 (Higinbothom ed. 1942). Likewise, historically, the Maryland General Assembly has made the Sheriff responsible "to furnish all supplies and provisions necessary, in his judgment, for the support and maintenance of all persons committed to the jail." Code of Public Local Laws of Harford County § 479 (Everstine ed. 1965); Public Local Laws of Harford County § 454 (Everstine ed. 1957); Public Local Laws of Harford County § 455 (Higinbothom ed. 1942). Neither the County Commissioners prior to 1973, nor the County Council and the County Executive since 1973, have ever been responsible for the operation or maintenance of the HCDC. The Boards and Commissions referenced by Plaintiffs do not exercise control or policy making authority over the HCDC or its personnel, legally or factually speaking, and the Plaintiffs have made no well-pled allegations to the contrary.

Applying Maryland law and observing the absence of any County law, leads to the only logical and lawfully supported conclusion, i.e., the State, through the General Assembly and the Sheriff and Warden, always have established the custom, policies and practices relative to the operation and maintenance of the HCDC and the health of HCDC inmates. Under the applicable Supreme Court precedents, such customs, policies and practices cannot be attributed to the County. The County simply has no *Monell* liability for the customs, policies and practices of the Sheriff or the Warden in the operation of the HCDC.

**CONCLUSION**

For the reasons stated herein and in the County's Motion to Dismiss Amended Complaint, Plaintiffs' Amended Complaint should be dismissed.

Respectfully submitted,

/s/ *Jefferson L. Blomquist*
Jefferson L. Blomquist
Federal Bar No. 03770
County Attorney
jlblomquist@harfordcountymd.gov

/s/ *Joseph G. Comeau*
Joseph G. Comeau
Federal Bar No. 20561
Litigation Attorney
jgcomeau@harfordcountymd.gov

/s/ *J. Ethan Clasing*
J. Ethan Clasing
Federal Bar No. 30293
Litigation Attorney
jeclasing@harfordcountymd.gov

Harford County Department of Law
220 S. Main Street, 3rd Floor
Bel Air, MD 21014
410-638-3205 – phone
410-879-7651 – facsimile

*Attorneys for Harford County, Maryland*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of August 2026 a copy of the foregoing Reply was filed electronically upon all parties entitled to service in this action.

Respectfully submitted,

*/s/ Jefferson L. Blomquist*
Jefferson L. Blomquist