**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **NATHANIEL POWELL, SR., et al.,** | * | |
| *Plaintiffs*, | * | |
| v. | * | **Civil Case No. 1:26-cv-00262-JMC** |
| **HARFORD COUNTY, MARYLAND** | * | |
| *Defendant*. | * | |

* * * * * * * * * * * * * * * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Nathaniel Powell, Sr., individually and as the personal representative of the Estate of Nathaniel Maurice Powell, Jr., Demetria Burks, and NP, a minor child by and through mother, Michelle Nielson brought the instant litigation against Defendant Harford County on January 21, 2026. (ECF No. 1). Plaintiffs assert a single *Monell* claim against the County. *See id.* In a Memorandum Opinion and Order dated May 7, 2026, the Court granted without prejudice and with leave to amend the Defendant's first motion to dismiss. (ECF No. 23). Plaintiff filed an Amended Complaint (ECF No. 24) on June 3, 2026. Defendant has now moved to dismiss the Amended Complaint. (ECF No. 27); (the "Motion"). The Motion is fully briefed (ECF Nos. 27, 30, 33), and no hearing is necessary pursuant to Local Rule 105.6 (D. Md. 2025). For the reasons that follow, the Motion will be DENIED.

## I. BACKGROUND

This case arises from the allegedly preventable suicide of Nathaniel Maurice Powell, Jr. while he was a pretrial detainee in the custody of the Harford County Sheriff's Office (the

"HCSO") at the Harford County Detention Center (the "HCDC"). (ECF No. 24 at 2).[1] At the first Motion to Dismiss stage, the Court concluded that the allegations in the Complaint failed to entitle Plaintiffs to a plausible inference that the conduct at issue is attributable to the County. The Court will now address the sufficiency of the new allegations concerning the same.[2]

Plaintiffs now allege "as a Charter ('home-rule') county, Harford County is expressly granted the duty, under Maryland State law, to: 'establish, maintain, regulate and control county jails, and county houses of correction or detention and reformatories, and to regulate all persons confined therein…'" (ECF No. 24 at 5). They continue, "[i]n its Charter, Harford County reserved for itself the full authority permitted home rule counties under state law." *Id.* Thus, Plaintiffs allege "Harford County was granted control of the Harford County Detention Center by State law and accepted that control under its Charter." *Id.* The statutory scheme underlying these allegations will be considered in greater detail below.

The Amended Complaint alleges the Charter "expressly permits the County to delegate its authority over the detention center to an agent like the Sheriff" through the provision stating the "powers mentioned in the preceding section shall be exercised only by the Council, the County Executive, and other officers, agents, and employees of the County acting under their respective authorities." *Id.* Plaintiffs assert that the Sheriff, Warden, and Deputies whose actions are at issue in this case are agents of Harford County for purposes of operating the detention center.

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

[2] In large part, the changes to the Amended Complaint reflect the allegations concerning the County's purported control of HCDC and its relationship with the State in this case. (ECF No. 24). Thus, the Court incorporates its previous summary of the facts concerning Mr. Powell's detention, suicide, and the alleged defective practices at HCDC. (ECF No. 23).

Plaintiffs also look outside of the Charter and allege that other acts show that Harford County "routinely exercises the authority to regulate the conduct of the Sheriff and his deputies (like the Warden and other individual deputies)." *Id.* at 6. For example, Harford County Code, Chapter 9, Part 3, Article XXII (§ 9-136) "established the 'Harford County Police Accountability Board,' as authorized under Title 3 of the Public Safety Article of the Annotated Code of Maryland." *Id.* "Members shall be appointed by the County Executive for terms coterminous with the County Executive and shall be confirmed by the County Council." *Id.* Section 9-138 of the Harford County Code delineates the Board's responsibilities to include "quarterly meetings with the heads of law enforcement agencies…to improve matters of policing….[a]ppoint[ing] civilian members to administrative charging committees and trial boards;"….[and] "[m]ak[ing] recommendations on changes to policy that would improve police accountability in the County." *Id.* Plaintiffs allege this is "one way in which Harford County maintains actual control and authority over the Sheriff, the Warden and the Deputies who work at the Detention Center." *Id.*

They next cite to the "Police Commission," which Harford County created and regulates by way of Harford County Code, Chapter 9, Part 2, Article III. The Police Commission is empowered to "formulate recommendations to the County, state and municipalities regarding:….Uniform standards of performance and standardized operating procedures…."; "[i]n-service training programs as required by the Maryland Police Training Commission and as recommended by the chief law enforcement officer of Harford County…."; and "[u]pdating, planning and coordination of law enforcement policy changes." *Id.* at 7. The Sheriff is explicitly designated as a member of the Police Commission: "The members of the Commission shall be the Sheriff of Harford County, who shall be Chairman of the Commission…" *Id.* Thus, Plaintiffs

allege that through this Commission, Harford County maintains actual control and authority over the Sheriff, the Warden, and Deputies who work for the Detention Center. *Id.*

Next, Plaintiffs assert that Harford County "works with the Sheriff's Office to review policies and practices and provide risk management/incident review, workers' compensation, and related advice and counsel." *Id.* at 8. In support of this assertion, they cite to a Harford County Sheriff's Office Administrative Policy, which was in effect when Mr. Powell passed away. *See id.* This policy states that the "HCSO provides a wide range of law enforcement and correctional services within Harford County," including "pretrial and post-trial detention." *Id.* Plaintiffs continue, "[t]he county-level functions of the Sheriff's Office include the Operations division of the Correctional Services Bureau—the entity receiving $34,016,369 in fiscal year 2024 from the county—which is responsible for 'prevention of suicides' and 'attempts to commit suicide.'" *Id.* Plaintiffs next summarize the statutory scheme governing Harford County's control of the budget and sheriff's deputies in Harford County. *Id.* (citing Md. Code Ann., Cts. & Jud. Proc. §§ 2-326, 2-313(c). Plaintiffs aver that one such budgeting effort involved an agreement between Harford County and the State through which the County was permitted to borrow funds to support its detention center operations and training. *Id.* at 9. "In particular, the bill [to borrow funds] included $20.5 million for the Harford County Sheriff's Office Central Precinct and Training Facility and $2.04 million for Harford County Detention Center Facility Repairs and Upgrades." (ECF No. 24 at 9). As such, Plaintiffs allege Harford County is the "entity providing 99.9% of the funding for the Sheriff's Office and Detention Center," thereby giving Harford County "the legal and practical ability to control the operation of the Detention Center, as well as the non-delegable duty to exercise this control in way which would have prevented the death at the heart of this case." *Id.* at 9-10.

At the first motion to dismiss stage, the Court reasoned that the complaint failed to allege a plausible claim that Sheriff Gahler acted as a County employee. In view of the amended allegations above, and construing all inferences in Plaintiffs' favor, the Court finds that the allegations are now sufficient to entitle Plaintiffs to discovery.

## II. STANDARD OF REVIEW

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F. Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

## III. ANALYSIS

Defendant County again essentially argues that the Complaint fails to state a claim because the alleged pattern and Sheriff Gahler's acts are not attributable to the County. *See* (ECF No. 27-1 at 2). In fact, the County styles its second motion to dismiss as a renewed motion that incorporates the arguments it originally made, now with some supplements. *See id.* at 3-4. These supplements dispute the veracity of Plaintiff's new allegations; however, the Court recognizes that some of these arguments about the alleged facts strive to address a unique matter of law. This is the sole issue presently before the Court. To that end, the County argues "Plaintiffs dubiously contend in paragraph 12 that the County is 'granted the duty' to operate, regulate and control county jails" because a county may not be granted such a duty. *Id.* at 4. In support of such a notion, the County states that the Harford County Charter does not provide for a department of correctional services and reiterates the familiar Maryland rule that sheriffs are state employees who in turn provide correctional services. *See id.* Much of Defendant's brief follows a similar pattern of reasoning. As such, the County repeatedly argues that Plaintiffs rely on flawed logic in support of their contention that a federal *Monnell* claim is plausible in view of the allegations concerning the relationship between Harford County and the HCDC and the County's relationship with the State. *See* (ECF Nos. 27, 33).

The Court finds that these arguments overlook the nuance afforded to such scenarios in multiple Fourth Circuit cases, particularly in the context of federal claims, as here. *See e.g., Dotson v. Chester*, 937 F.2d 920, 926 (4th Cir. 1991); *Santos v. Frederick Cnty. Bd. of Comm'rs*, 346 F. Supp. 3d 785, 798-99 (D. Md. 2018); *Ledergerber v. Blubaugh*, No. CV JKB-20-966, 2020 WL 7029868, at *4 (D. Md. Nov. 30, 2020); *J.A. v. Abreu*, Civil No.: 1:23-cv-02922-JRR, 2024 WL 3638023, at *4 (D. Md. Aug. 2, 2024). As an initial matter, the Court observes that the majority of the County's arguments depend on whether Plaintiff's allegations are true. At this

stage, the question is not whether the allegations are true; rather, the question is whether the allegations are sufficient to state a cognizable claim, assuming that they are true. To the extent that the County's disputes may bear on the legal argument before the Court, the Court will consider them. However, the Court may not dismiss the claim based on the notion that the County disputes the veracity of the allegations in the Amended Complaint. *Humphrey*, 885 F. Supp. at 136.

Under the first Complaint, the Court was not persuaded that the allegations supported an inference that Sheriff Gahler created or enforced any County policy so as to impute the conduct of a state actor to the County. *E.g.*, *Harford Cnty. Branch of the NAACP v. Gahler, et al.*, Civil Case No.: 1:26-cv-00239-JMC, 2026 WL 1719352, at *7 (D. Md. Jun. 15, 2026) (recognizing that there is no dispute that Maryland law treats sheriffs as state employees). In *Harford County Branch of the NAACP*, this Court again revisited the boundaries of various Maryland actors' immunities when the perpetrators of the alleged wrongs were sheriffs working at a Harford County detention center. *Id.* There, as here, federal claims were at issue, and the Court recognized that the Fourth Circuit does not foreclose the possibility that such claims may be plausible in certain scenarios notwithstanding the *Ledergerber v. Blubaugh* notion that federal claims against Maryland sheriffs should observe the Maryland state law rule that they are state employees. *See id.* at *9. To that end, the Court reasoned

> *Ledergerber* clarified that absent the *Dotson* final policymaking authority exception, federal courts analyzing federal law claims against Maryland sheriffs follow the Maryland state rule that a sheriff acts as a state official when performing law enforcement duties. *Ledergerber*, 2020 WL 7029868, *4. In *Ledergerber*'s wake, discussion of this issue has been somewhat watered down, as Courts have repeatedly recognized that *Dotson* applied to a narrow scenario with a specific statutory scheme at issue.

*Harford Cnty. Branch of NAACP*, 2026 WL 1719352, at *9. The Court then revisited the *Dotson v. Chester* final policymaking exception. There, the Fourth Circuit observed "the [Dorchester]

county commissioners …empowered a nonpartisan board…to act as jail supervisors" rather than opting to be a charter county. *Dotson*, 937 F.2d at 929. Ultimately, the Fourth Circuit concluded that the unique nature of the agreement, which transferred certain responsibilities from Dorchester County to the sheriff empowered the sheriff to "make…by-laws, rules and regulations, as he may think necessary and proper, for the clothing, regulation, management, control and conduct" of prisoners engaged in work or manual labor. *Id.* at 930. Ultimately, the Fourth Circuit concluded that "[r]egardless of the County's reasons for transferring the final policymaking authority from county citizens to the County Sheriff…the historical changes in the Code demonstrate that the County Jail has been and remains a *county* facility." *Id.* The court's analysis was complicated by the undisputed fact that Dorchester County, unlike Harford County, is a non-charter county. *Id.*

Here, it is undisputed that Harford County is a charter county, and the Amended Complaint includes several paragraphs concerning the Harford County Charter. The *Dotson* court emphasized that Maryland charter counties, also referred to as "home rule" counties, are "expressly granted the power to "establish, maintain, regulate and control county jails, and county houses of correction or detention and reformatories, and to regulate all persons confined therein...." *Id.* (quoting Md. Code Ann. art. 25A, § 5(C)). Thus, the *Dotson* court recognized that "the Sheriff is not always a state employee or always a county employee. He may, on occasion, be both, or sometimes one and sometimes the other. It all depends on the particular function the Sheriff is performing." *Id.* at 928. For example, "[i]n charter counties, state statutes confer authority on the counties to transfer control of the jail from the sheriff to a county warden." *Id.* Thus, the Fourth Circuit had "no doubt but that sheriffs are final policymakers for counties when

operating jails in charter counties." *Id.* The Amended Complaint alleges that Sheriff Gahler was sheriff responsible for HCDC in a charter county.

However, this does not end the analysis. The *Dotson* reasoning was published in 1999, and since then, the discussion relevant to this case relied on two repealed and replaced acts. First, Md. Code Ann. art. 25A, § 5(C) was replaced in 2013 by the "Express Powers Act." Indeed, in 2013, the General Assembly enacted the Express Powers Act, Maryland Code (2013), Local Government Article ("LG") § 10-101, *et seq*., "which...endows charter counties with a wide array of legislative and administrative powers[.]" *Angel Enters. Ltd. P'ship v. Talbot Cnty.*, 474 Md. 237, 261, 254 A.3d 446 (2021). The Express Powers Act repealed and replaced Md. Code Ann. Art. 25A, as cited in *Dotson*, in entirety. That notwithstanding, § 10-304 "is new language derived without substantive change from former Art. 25A, § 5(C)." *See* Revisor's Note, § 10-304. Indeed, like 25A, § 5(C), § 10-304 permits a county to "establish and maintain local correctional or detention facilities and juvenile facilities." Plaintiff pleads in detail that the Harford County charter accepts these express powers. Similarly, under § 10-304, charter counties are empowered to "provide for the borrowing of money on the faith and credit of the county and for the issuance of bonds or other evidences of indebtedness in accordance with local law." Md. Code Ann. Loc. Gov't § 10-203 (2025).

Second, the *Dotson* court relied on another since repealed and replaced act in reaching the conclusion that sheriffs are final policymakers in the correctional facility context. *Dotson*, 937 F.2d at 928 (relying on repealed Md. Code Ann. Art 87 § 48 in support of the conclusion that there is "no doubt but that sheriffs are final policymakers for counties when operating jails in charter counties"). The Court observes that the same statutory provision discussed in *Dotson* now appears in Md. Code Ann. Corr. Servs. § 11-201(b)(1). Indeed, like *Dotson* reasoned,

charter counties, through their councils, are empowered to "provide for the appointment of a qualified individual as managing official of the local correctional facility and for qualified assistants necessary to perform the duties of that office" by way of § 11-201(b)(1). The General Assembly enacted § 11-201 to streamline what was formerly Md. Code Ann. Art 87 § 48. *See* Revisor's Note, § 11-201. A managing official "is responsible for the safekeeping, care, and feeding of incarcerated individuals in the custody of a local correctional facility…" § 11-201(b)(2). Seeing that the *Dotson* court relied on the substantially similar language before concluding that there can be no doubt sheriffs are final policymakers when operating jails in charter counties and no legislative history showing intent to alter that provision's impact on sheriffs, the Court is satisfied that the *Dotson* analysis continues to reflect an accurate discussion of Maryland law.

Plaintiffs explicitly allege that the Harford County Charter, through Section 101, reserves all rights and powers of local self-government and home rules as afforded by the Constitution and the laws of the State of Maryland. (ECF No. 24 at 5). Specifically, they plead that the charter reserves "all rights and powers of local self-government and home rule as are now or may hereafter be provided or necessarily implied by this Charter and by the Constitution and laws of the State of Maryland" and that the County "shall have all such rights and powers as completely as though they were specifically enumerated in this Charter, and no enumeration of rights or powers in this Charter shall be deemed exclusive or restrictive." *Id.* Thus, they allege that Harford County was granted control of the HCDC and accepted such control under its Charter. Against the statutory backdrop above, and in view of the details added to the Amended Complaint, the Court is inclined to follow *Dotson*'s observation that charter county sheriffs act as final policymakers in this regulatory framework. Nor has this Court foreclosed such a possibility.

*E.g.*, *Harford Cnty. Branch of NAACP*, 2026 WL 1719352, at *9 ("While the Court certainly agrees with Plaintiffs that such a possibility is not foreclosed, the Complaint fails to establish a plausible factual basis upon which the Court could find that *Dotson* has been satisfied. For example, the Complaint fails to plead any facts concerning the Harford County Code, whether it is a charter county under *Dotson*, or similar facts showing Sheriff Gahler or Warden Galbraith acted in any capacity other than as State actors tasked with carrying out enforcement duties at a County facility.").[3]

The Plaintiffs' ensuing allegations concerning the County's various boards and councils that maintain authority over the Sheriff, Warden, and deputies who work at HCDC and Harford County's control of the budget and appointment of the sheriffs who are responsible for funding and operation of HCDC further support, at the very least, a plausible inference of the requisite control necessary to survive a motion to dismiss. As the Court acknowledged above, Defendant's arguments disputing the veracity of these alleged facts are not dispositive at this stage. Whether discovery reveals that the alleged facts concerning Harford County's control of HCDC are true is not a matter presently before the Court. At this early stage, and in view of the allegations the Court finds satisfy the door left open to charter counties in *Dotson*, the Court is not prepared to over-simplify the question of sheriffs as county actors in this correctional facility context.[4]

For those reasons, the Motion to Dismiss (ECF No. 37) is DENIED.

---

[3] Defendant's reliance on *Santos v. Frederick Cnty. Bd. of Comm'rs*, 346 F. Supp. 3d 785, 794 (D. Md. 2018) in its Reply (ECF No. 33) is unpersuasive. *See Harford Cnty. Branch of the NAACP v. Gahler*, No. 1:26-CV-00239-JMC, 2026 WL 1719352, at *8 (D. Md. June 15, 2026) ("Post-Santos, this Court has repeatedly distinguished the circumstances there as an outlier scenario involving an agreement between County and State conferring policymaking power in the Sheriff."). For the reasons discussed *supra*, *Dotson* supports the Court's conclusion.

[4] Because the foregoing analysis requires the Court to deny the Motion (ECF No. 27), it is not necessary to assess the remaining arguments raised in the briefing. The Court expresses no opinion on the Plaintiff's *Ram Ditta* and finance code arguments. Defendants shall not be precluded from renewing the arguments assessed in the instant motion at a later juncture, if appropriate; nor shall Plaintiffs be precluded from the same.

## IV. CONCLUSION

For the foregoing reasons, it is this 4th day of September 2026, hereby **ORDERED** that Defendant's Motion to Dismiss (ECF No. 27) is DENIED. Defendant's answer is due within twenty-one days of the date of this Memorandum Opinion and Order.

Dated: September 4, 2026

/s/

J. Mark Coulson
United States Magistrate Judge